[No. 11478–0–II. Division Two. May 24, 1989.]

WASHINGTON FEDERATION OF STATE EMPLOYEES, *Respondent,* v. THE STATE PERSONNEL BOARD, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Ceil Buddeke, Assistant,* for appellant.

*Edward E. Younglove III* and *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff, P.S.,* for respondent.

ALEXANDER, C.J.—The Washington State Personnel Board appeals an order of the Thurston County Superior Court declaring WAC 356–18–130 invalid. We affirm, holding that the trial court did not err in concluding that the rule exceeded the authority of the Board.

The Washington Federation of State Employees commenced this action in the Thurston County Superior Court against the Washington Personnel Board. It sought a declaration that a rule of the Personnel Board, WAC 356–18–130, was invalid. The Federation claimed that the trial court should declare the rule invalid for the reason that the rule was in excess of the statutory authority of the agency, in that it conflicted with RCW 38.40.060.

The challenged rule relates to the computation of paid leave for state employees who engage in periodic active duty military training. The rule (repealed 1988) provides as follows:

WAC 356–18–130 Military training leave—Paid. (1) Paid leave not to exceed *15 calendar days* in any one calendar year shall be allowed an employee ordered to active duty training in:
(a) Washington National Guard.
(b) U.S. Army, Navy, Air Force, Coast Guard or Marine Corps Reserve.
(c) Any organized reserve or armed forces of the United States.
(2) Such leave shall be in addition to any vacation leave to which an employee might otherwise be entitled and shall not involve any loss of efficiency rating, privileges or pay.

(Italics ours.)

The parties agree that under the rule, as construed by the Board, state employees who engage in active duty military training are charged with taking military leave on any work days in which they engage in such training, as well as nonworking days that fall between working days on which the employee participates in the training. Accordingly, an employee who engages in military training on a Friday through the following Monday is charged with having taken leave on the intervening Saturday and Sunday (a total of 4 days), even if the employee would not have been required to work at his state job on that weekend.

The Federation contended in superior court that the rule conflicted with RCW 38.40.060, which provides in pertinent part:

Every officer and employee of the state . . . shall be entitled to and shall be granted military leave for absence *from such employment* for a period not exceeding *fifteen days* during each calendar year. . . . Such military leave of absence shall be in addition to any vacation or sick leave to which the officer or employee might otherwise be entitled, and shall not involve any loss of efficiency rating, privileges, or pay. . . .

(Italics ours.) The Federation argued that the statute dictates that only *work days* which are missed by an employee due to military service are to be counted against the employee's entitlement of 15 days' military leave each calendar year. The trial court agreed that the challenged rule conflicted with the statute and, consequently, declared the rule invalid. The Board appeals to this court.

As a threshold argument, the Board contends that the Federation failed to allege a statutory basis under which the rule can be declared invalid. We disagree. RCW 34.04.070 indicates the circumstances under which the Thurston County Superior Court may declare the rule of a state administrative agency invalid. The statute provides:

> [T]he court shall declare the rule invalid only if it finds that it violates constitutional provisions *or exceeds the statutory authority of the agency* or was adopted without compliance with statutory rule–making procedures.

(Italics ours.) RCW 34.04.070(2).

■ The Board, citing RCW 41.06.150,[1] argues that because it has authority to adopt rules regarding sick leave and vacations, its rule was not in excess of its authority. This argument overlooks the inherent limitation on any administrative agency. Agencies do not have the power to make rules which amend or change legislative enactments. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified in part*, 95 Wn.2d 962, 633 P.2d 1324 (1981). Consequently, if the challenged rule conflicts with RCW 38.40.060 in the manner the Federation contends, it would clearly be beyond the authority of the agency and its invalidation by the superior court would be proper.

---

[1] RCW 41.06.150 provides as follows:

"The board shall adopt rules, consistent with the purposes and provisions of this chapter, as now or hereafter amended, and with the best standards of personnel administration, regarding the basis and procedures to be followed for:

". . .

"(8) Sick leaves and vacations;"

 Our task then is to determine if the rule conflicts with RCW 38.40.060. This requires us to interpret the meaning of that statute. Interpretation of a statute is a matter of law subject to independent appellate review. *Glacier Springs Property Owners Ass'n v. Glacier Springs Enters., Inc.,* 41 Wn. App. 829, 706 P.2d 652, *review denied,* 105 Wn.2d 1002 (1985). The primary objective of statutory construction, however, is to carry out the intent of the Legislature. *Bellevue Fire Fighters Local 1604 v. Bellevue,* 100 Wn.2d 748, 675 P.2d 592 (1984), *cert. denied,* 471 U.S. 1015 (1985). Where the language of a statute is plain and unequivocal, courts must construe it according to its true intent, notwithstanding a contrary construction by an administrative agency. *Smith v. Northern Pac. Ry.,* 7 Wn.2d 652, 110 P.2d 851 (1941). Statutory language is deemed to be ambiguous when it is susceptible to more than one reasonable interpretation. *Sayan v. United States Auto. Ass'n,* 43 Wn. App. 148, 153, 716 P.2d 895, *review denied,* 106 Wn.2d 1009 (1986).

We agree with the trial court and the Federation that RCW 38.40.060, when read in its entirety and construed in a manner consistent with its general purpose, is unambiguous and evidences a clear intent that military leave is to be computed on a *work day* basis. This intent is made clear by the plain language of the statute, which provides that employees of the state of Washington are to be granted military leave *"from such employment* for a period not exceeding fifteen days . . ."

The Board contends that because the word *"days,"* is undefined in the statute, it should be given its plain and ordinary meaning, which it contends is synonymous with *calendar days.* As authority for this position, it cites *Schampier v. Office of Gen. Servs.,* 99 Misc. 2d 1049, 417 N.Y.S.2d 829 (1979), *rev'd,* 73 A.D.2d 1011, 424 N.Y.S.2d 57 (1980), and *Smith v. School Dist. 1, Multnomah Cy.,* 34 Or. App. 425, 578 P.2d 820 (1978), in which courts in New York and Oregon have construed the word "days," as it appears

in their military leave statutes, as meaning calendar days. We find these cases unpersuasive.

In *Smith*, the court relied solely upon legislative acquiescence in an administrative interpretation, in construing Oregon's military leave statute as providing for a calendar day basis of computation. This legislative acquiescence, according to the Oregon court, was further evidenced by "legislative history," which that court cited as indicating that the Legislature was aware of the administrative construction. *Smith*, 578 P.2d at 821. Although we do not ascribe to a bare reliance on legislative acquiescence as did the court in *Smith*, we note that there is a complete absence of legislative history indicating that the Washington State Legislature was ever made aware of the Board's calendar day basis of computing military leave. Accordingly, we find the Oregon court's reasoning unpersuasive.

The New York court's holding in *Schampier* is also distinguishable. The New York court relied solely upon its *interpretation of the word "days" without consideration of* the context in which the term was used in the statute. *See Schampier*, 424 N.Y.S.2d at 58. Indeed, it is interesting to note that the trial court in *Schampier*, which was reversed by the appellate court, adopted the "working days" interpretation based on the context in which the term "days" was used in the statute as a whole, stating:

> It would appear therefrom that the leave of absence provided for in the statute was not merely a leave of absence from regular place of residence or community but rather "from his duties or service as such public officer or employee". [(Language of statute.)] This is persuasive on the court as meaning that the word "days" as used in the statute relate to work days as opposed to calendar days.

*Schampier*, at 1053.

The Board's argument, like the opinion of the appellate court in *Schampier*, ignores the rule of statutory construction that words in a statute take their meaning from the context in which they are used. *See State v. Wanrow*, 88

Wn.2d 221, 228, 559 P.2d 548 (1977); *PUD 1 v. WPPSS,* 104 Wn.2d 353, 369, 705 P.2d 1195, 713 P.2d 1109 (1985). As we have noted, the term "days" as used in the military leave statute, RCW 38.40.060, is used in reference to "employment," thus, placing the term in the context of work days, not calendar days. The statute appears to us to be clear and unambiguous in this regard. Accordingly, an employee should not be charged with having taken leave from his "employment" on days the employee is not required to be on the job.

The Board also devotes considerable attention in its brief to its argument that the Legislature's intent can be gleaned from: (1) the interpretation placed on a comparable federal military leave statute by the Comptroller General of the United States; (2) the Legislature's acquiescence in the Personnel Board's construction of the statute in its rule; and (3) the construction placed upon the military leave statute by Washington's Attorney General.

We find these arguments unavailing for the reason that the statute is clear and unambiguous and hence this court may not consider legislative history or related statutes for construction of the statute. *See Sayan,* 43 Wn. App. at 153. Where the language of a statute is plain, there is no room for construction, and the meaning of the statute must be derived from the wording itself. *Roberts v. Clark Cy. Fire Protec. Dist. 4,* 44 Wn. App. 744, 747, 723 P.2d 488 (1986).

Furthermore, even if we were to consider the factors cited by the Board as evidence of the Legislature's intent, they do not persuade us that the Legislature intended that an employee of the state should be charged with having taken military leave on nonwork days.

The Board correctly points out that a statute adopted from another jurisdiction will carry the construction placed upon such statute by the other jurisdiction. *State v. Carroll,* 81 Wn.2d 95, 109, 500 P.2d 115 (1972). There is nothing in our state's legislative history, however,

that reveals, as the Board asserts, that Washington's military leave statute was patterned on a federal statute.[2] We note that the two statutes have some similarities, however, similarities alone, absent evidence that Washington's statute was in fact "adopted" from the federal provisions, renders the construction of such foreign provisions uncontrolling. *See State v. Carroll, supra.*

Furthermore, the federal statute cited by the Board differs significantly from Washington's military leave statute. The federal statute refers to entitlements to leave from "duties." The Comptroller General of the United States apparently construed the term "duties" to have a broad meaning, and concluded that a federal employee is away from his or her duties whenever such person is subject to military control by being under active duty orders.[3] In contrast, Washington's military leave statute refers, as we have noted, to leave from "employment." In our judgment, the statutes are not comparable and the State's reliance on the construction of the federal statute is misplaced.

 The Board's assertion that the Legislature has acquiesced in its construction of the statute is equally without merit. Initially, we note that there has been little

---

[2]The Board contends that Washington's military leave statute was modeled after the 1938 predecessor to 5 U.S.C. § 6323. The statute was in effect prior to the 1939 enactment of Washington's military leave statute, and provided, in pertinent part:

*Provided,* That all officers and employees of the United States or of the District of Columbia who are members of the Naval Reserve shall be entitled to leave of absence from their respective duties without loss of pay, time, or efficiency rating, on all days during which they may be employed with or without pay under the orders or authorization of competent authority, on training duty for periods not to exceed fifteen days in any one calendar year.

Naval Reserve Act of 1938, Pub. L. No. 75-732, 52 Stat. 1175, 1177 (1938).

[3]This interpretation is evidenced in the following passage from a 1983 Comptroller General opinion addressing the federal military leave statute:

During the period that an employee is subject to military control under active duty orders, the employee may not be regarded as present for work in his civilian position, since civilial work is incompatible with military active duty status. . . .

(Italics ours.) Comp. Gen. Op. B-211249 (Sept. 20, 1983).

or no controversy regarding the Board's interpretation,[4] and, consequently, it can hardly be said that the Board's construction of the statute has been called to the Legislature's attention. In addition, we note that the construction of the statute has not even been consistent among state administrative agencies. The Higher Education Personnel Board (HEPB) has construed the military leave statute in a way that accords with the position asserted here by the Federation. *See* WAC 251–22–170. Although this construction was not made by the HEP Board until 1987, in the case of Gunderson v. Spokane Community College District 17, Higher Educ. Personnel Bd. Dec. 1996 (1987) the existence of a contrary construction of the military leave statute would preclude us from inferring that the Legislature has acquiesced in one administrative construction to the exclusion of the other.

The Board's final argument is that this court should place considerable weight on the construction placed upon the military leave statute by the Washington State Attorney General in 1959, which construction accords with the Board's calendar day interpretation. AGO 76 (1959). This argument is similarly without merit.

▪ Initially, we note that opinions of the Attorney General, while persuasive of legislative intent, are not controlling. *See Everett Concrete Prods., Inc. v. Department of Labor & Indus.,* 109 Wn.2d 819, 828, 748 P.2d 1112 (1988). Furthermore, we find the Board's reliance on the opinion of the Attorney General to be misplaced. The Attorney General's opinion was based, in part, on the construction given the federal statute by the Comptroller General. As noted above, we reject any reliance on the federal act as an indication of the Legislature's intent when it adopted Washington's military leave statute.

---

[4] We acknowledge that House Bill 407 was introduced during the 1987 legislative session, which proposed to amend RCW 38.40.060 precisely as sought by the Federation by adding the word "working" prior to the term "days." This bill was never reported out of committee. *See* House Journal, 50th Legislature (1987), at 2675.

In light of the clear and unambiguous language of the statute, we conclude that the term "days" as used in the context of "employment" evidences the Legislature's clear and unequivocal intent that military leave be computed on a work day basis.

Affirmed.

PETRICH and WORSWICK, JJ., concur.