**Les E. ROLEY, Plaintiff–Appellant,**

v.

**PIERCE COUNTY FIRE PROTECTION DISTRICT NO. 4, a Municipal Corporation of the State of Washington, Defendant–Appellee.**

No. 88–3648.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided March 6, 1989.

Douglas Kaukl, Puyallup, Wash., for plaintiff-appellant.

Vernon W. Harkins, Tacoma, Wash., for defendant-appellee.

Before WRIGHT, TANG and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We consider whether the court ruled correctly in granting summary judgment where it found no equal protection or procedural due process violation in the discharge of a fire chief.

BACKGROUND

Roley worked for the Pierce County Fire Protection District No. 4 for over 20 years and served as its full-time fire chief since 1979.[1] The Board of Fire Commissioners in January 1987 presented him with a memorandum listing 11 areas of unsatisfactory performance.[2] He responded in writing to each allegation.

In February the Board held a public meeting to consider the charges against Roley. Although it refused to allow him to call witnesses, he testified and presented written evidence to refute the charges. After adjourning to decide what action to take, the Board fired him.

Roley demanded a review of his discharge in accordance with civil service

---

1. A fire protection district provides fire and emergency medical services to unincorporated areas. Wash.Rev.Code § 52.02.020 (1987).

2. The Board, composed of three resident electors, manages the business affairs of the district. Wash.Rev.Code § 52.14.010 (1987).

rules, Wash.Rev.Code ch. 41.08 (1987). The Board refused this demand because it had not adopted civil service review and was not obligated under Washington law to provide it.

He commenced a 42 U.S.C. § 1983 action alleging equal protection and procedural due process violations. The court granted summary judgment in favor of the District. ANALYSIS

To prevail on a 42 U.S.C. § 1983 claim, Roley must show that the Board deprived him of a constitutional right.[3] *Rinker v. Napa County,* 831 F.2d 829, 831 (9th Cir. 1987).

### I. *Equal Protection*

■ He argues that Wash.Rev.Code ch. 41.08 (1987) and § 52.30.040 (1987) violate the Equal Protection Clause because the classification between fire fighters in municipal areas and those in fire protection districts has no rational basis.

Washington under ch. 41.08 provides a comprehensive civil service system for fire fighters of cities, towns and municipalities. A civil service commission administers the system. Wash.Rev.Code § 41.08.030 (1987). It makes suitable rules and regulations that provide for examinations, appointments, promotions, suspensions and discharges, Rev.Code Wash. § 41.08.040(1) (1987); investigates matters under civil service review, § 41.08.040(4); hears and determines appeals or complaints, § 41.08.040(6); and formulates and holds competitive tests to determine the relative qualifications of those seeking employment, § 41.08.040(8).

Fire protection districts under Wash.Rev. Code § 52.30.040 (1987) may, but are not required to, adopt these procedures.[4] *See Roberts v. Clark County Fire Protection Dist. No. 4,* 44 Wash.App. 744, 723 P.2d 488, 489–90 (1986).

Because this district did not adopt ch. 41.08, its employees were not entitled to civil service review. Roley contends that there is no rational basis to distinguish between fire fighters of municipal areas who receive civil service review and those within his district who do not.

■ "Absent a suspect classification or the infringement of a fundamental right, neither of which is alleged to exist here, the equal protection clause is offended only if the statute's different treatment of the two classes of local government employees bears no rational relationship to a legitimate governmental purpose." *Bunyan v. Camacho,* 770 F.2d 773, 774 (9th Cir.1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986) (citing *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). Assessing whether the challenged statutes rationally further a legitimate governmental goal, we may consider the actual basis on which the legislature acted or any hypothetical basis on which it might have acted. *Christy v. Hodel,* 857 F.2d 1324, 1328 n. 2 (9th Cir.1988); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, n. 2, 25 L.Ed. 2d 491 (1970) (uphold economic or social welfare classification if any set of facts justifies); *Bunyan,* 770 F.2d at 774. We presume the Washington legislature acted within its constitutional powers even when some unequal treatment results, *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

There was rational basis for distinguishing between fire fighters in municipalities and those in districts. Washington has a "valid interest in preserving the fiscal integrity of its programs ... [and] may legitimately attempt to limit its expenditures." *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971).

**3.** A claimant must also show that the conduct complained of was committed by a person acting under state law. *Rinker,* 831 F.2d at 831.

**4. § 52.30.040. Civil service for employees**
A fire protection district with a fully-paid fire department may, by resolution of its board of fire commissioners, provide for civil service

in its fire department in the same manner, with the same powers, and with the same force and effect as provided by chapter 41.08 RCW for cities, towns, and municipalities, including restrictions against the discharge of an employee because of residence outside the limits of the fire protection district.

It could distinguish between districts and municipalities because of the expense of establishing and maintaining a comprehensive civil service system designed for municipalities. In particular, the preparation and conducting of competitive examinations is costly and inefficient in a district such as District No. 4 that employs only three full-time fire fighters. The expense of maintaining such a system could preclude district residents from being able to provide fire protection for their families and homes.

Although Roley brings this equal protection challenge to obtain civil service review, the district's procedure for discharging him paralleled those of ch. 41.08. A fire fighter of a municipality may be discharged for a variety of reasons, including incompetence, inefficiency, insubordination and discourteous treatment of a fellow employee. Rev. Code Wash. § 41.08.080 (1987). A fire fighter would be provided with a written accusation and could demand an investigation, which the commission would provide in a public hearing. The accused could present a defense. Wash.Rev.Code § 41.08.090 (1987). The Board followed these procedures.

We note also that Washington law allows cities, towns and municipalities to exclude their fire chiefs from the civil service system. Wash.Rev.Code § 41.08.050 (1987).

## II. *Procedural Due Process*

Roley contends that the Board denied him procedural due process when it deprived him of constitutionally protected property and liberty interests. The Fourteenth Amendment protects one from deprivations of property or liberty without procedural due process. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir.1988). Due process requires an opportunity to be heard at a meaningful time and

in a meaningful manner. *Brady*, 859 F.2d at 1554.

Before determining the procedural process due, we evaluate whether Roley has a constitutionally protected property or liberty interest. *Merritt v. Mackey*, 827 F.2d 1368, 1370 (9th Cir.1987) (citing *Board of Regents*, 408 U.S. at 571, 92 S.Ct. at 2706).

### a. Property Interest

■ One has a property interest in continued employment only when "he has a reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere 'unilateral expectation.'" *Brady*, 859 F.2d at 1547–48 (citing *Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709). Rules or understandings from independent sources such as state law may give rise to entitlements.[5] *Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709, *Brady*, 859 F.2d at 1548.

An employee under Washington law has no constitutional property interest in public employment. *Danielson v. City of Seattle*, 108 Wash.2d 788, 742 P.2d 717, 721 (1987); *Jordan v. City of Oakville*, 106 Wash.2d 122, 720 P.2d 824, 829 (1986).

A constitutionally protected property interest may arise from the civil service system under which the employee works. *Danielson*, 742 P.2d at 721; *Giles v. Department of Social and Health Serv.*, 90 Wash.2d 457, 583 P.2d 1213, 1216 (1978). Washington does not require that fire protection districts adopt the civil service system of ch. 41.08 and this district did not. § 52.30.040. *See also Roberts*, 723 P.2d at 489–90; *Jordan*, 720 P.2d at 827 (city's failure to maintain civil service system for police officers did not violate law where system required only for forces of more than three officers). Washington did not provide Roley with a constitutionally protected property interest.[6]

---

**5.** Although state law creates the property interest, not all such rights are constitutionally protected interests. Federal constitutional law determines whether it is a legitimate claim of entitlement protected by the Due Process Clause. *Brady*, 859 F.2d at 1548 n. 3 (quoting

*Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709.)

**6.** Both the Board and Roley seemed to assume that he was terminable at will. He argued that because § 52.30.040 violated the Equal Protec-

### b.  Liberty Interest

A liberty interest in employment arises when a government charge damages seriously one's standing and associations in the community.[7]  *Board of Regents,* 408 U.S. at 573, 92 S.Ct. at 2707; *Roth v. Veteran's Admin. of Gov't of U.S.,* 856 F.2d 1401, 1410 (9th Cir.1988).  When one's good name, reputation, or integrity is at stake or when the government stigmatizes a person, foreclosing his freedom to pursue other employment opportunities, then the allegations damage standing and associations. *Board of Regents,* 408 U.S. at 573, 92 S.Ct. at 2707; *Veteran's Admin.,* 856 F.2d at 1411.

■ Roley argues that the Board's charges damaged his reputation.  It alleged:

It is the opinion of the Board of Commissioners of the District that your performance in the position of Chief of the District is unsatisfactory in the following areas:

1. You have failed to provide leadership....

2. You have failed to provide the District with active and constructive management....

3. You have failed to provide and maintain proper supervision....

4. You have failed to stimulate and maintain the proper attitude and morale....

5. ... you have failed to follow through with the ideas and objectives expressed in the memoranda....

6. Your relationship with and communication to the volunteer and part time officers of the District has failed to show improvement....

7. You have failed to exercise proper supervision of personnel....

8. ... you have failed to follow through with the [volunteer driver's license] policy and have failed to restrict the driving activities of one volunteer when notified to do so by the District's insurance broker.

9. Your actions as Chief have resulted in the filing of a grievance by the District secretary....

10. ... your actions indicate antagonism towards the Board.  You appear to place the interests of certain personnel of the District above the interests of the Board of Commissioners of the District in your management of the District.

11. ... your management of the Fire Department has failed to keep pace with such development and you no longer appear to be capable of providing the leadership that the Department must have at this time.

We evaluate the nature of the charges and not the actual consequences of them to determine whether they implicate a liberty interest.  *Veteran's Admin.,* 856 F.2d at 1411.  These charges do not impair Roley's reputation for honesty or morality and cannot give rise to a liberty interest on that basis.  *See Brady,* 859 F.2d at 1552; *Veteran's Admin.,* 856 F.2d at 1411.

■ When delineating the scope of the liberty interest, we distinguish between a stigma of moral turpitude, which infringes a liberty interest from incompetence or inability to get along with others, which does not.  *Veteran's Admin.,* 856 F.2d at 1411 (citing *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 365–66 (9th Cir.1976)).

These charges against Roley focus on his lack of competence as a Fire Chief and his inability to get along with and to manage others.  They do not infringe a liberty interest.  *See Veteran's Admin.,* 856 F.2d at 1411 (difficulty getting along with others and poor management); *Stretten,* 537 F.2d at 366 (unsatisfactory work and unwillingness and inability to deal with coworkers);

---

tion Clause, he was entitled to civil service review which gave him a property interest.  Because we find the statute constitutional, civil service did not provide a property interest.  He did not argue nor present evidence that he had a property interest arising from an express or implied contract for continued employment, an objective representation of tenure, or a collective bargaining agreement.  *Danielson,* 742 P.2d at 721.

**7.**  A person must also show tangible loss, which is not in question in this case.  *See Veteran's Admin.,* 856 F.2d at 1410.

*Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (deliberate undermining of social agencies, insubordination, incompetence, hostility toward authority and aggressive behavior); *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir.1973), *cert. denied*, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974) (poor teacher and scholar). Allegations of incompetence may force an individual down a notch in the professional hierarchy. *Veteran's Admin.*, 856 F.2d at 1411 (citing *Stretten*, 537 F.2d at 366).

 We distinguish between allegations that may reduce economic rewards and diminish prestige from those that may exclude one permanently from the profession or trade or interrupt employment for a protracted period of time. *Veteran's Admin.*, 856 F.2d at 1411 (citing *Stretten*, 537 F.2d at 366). Allegations that reduce economic rewards do not warrant constitutional procedural protection. *Veterans Admin.*, 856 F.2d at 1411. In *Stretten*, defendants charged him with an inability to perform satisfactorily as a pathology resident and an unwillingness and inability to cooperate. We found that these charges were unlikely to prevent him from practicing medicine or pathology. *Id.; see also Veteran's Admin.*, 856 F.2d at 1411 (no evidence that Roth foreclosed from practicing as psychiatrist where allegations of difficulty getting along with others and poor manager).

Allegations that exclude a person permanently from a profession may warrant procedural protection. *Id.* (citing *Stretten*, 537 F.2d at 366 (label that prevents one from practicing profession at all may infringe liberty interest)). We do not reach the question of whether these allegations are so broad as to foreclose employment opportunities.

Roley did not allege that the charges against him affected his employment opportunities, let alone exclude him from his occupation as a fire fighter. Nor did he present evidence that he would be disqualified from employment as a fire fighter in which his counsel asserts he had an excellent performance record. He has asserted only that his reputation has been damaged by the board's allegations, not that he has permanently been precluded from serving as a fire chief. *See generally Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) (characterization as regulatory specialist in banking law too narrow noting, that license to practice law retained); *Stretten*, 537 F.2d at 366 (scope of employment defined as physician, not pathologist).

AFFIRMED.